FARMER, J.
In this proceeding under the Administrative Procedure Act,[1] the School Board appeals a final order determining that its unwritten policy failed to satisfy formal statutory requirements for the adoption of agency policy. We affirm.
The policy in question relates to the use of teacher’s aides (paraprofessionals) to perform certain urinary catheterizations of students. Some students require urinary catheterizations on a frequent basis. The procedure, “clean intermittent catheterization,” involves the insertion of a tube into the bladder through the urethral opening to facilitate the elimination of urine which cannot be otherwise discharged. Section 232.465(2)(a)[2] authorizes the School Board *1271 to assign non-medical school personnel to perform certain specified medical procedures, including this one, provided that such personnel are trained and monitored periodically. For children requiring the procedure in its district, the School Board imposed an informal, unwritten policy to train some of the school’s non-medical personnel, in this case teacher’s aides (paraprofessionals), to perform the procedure.
The APA defines “rule” (with certain nonpertinent exceptions) as:
“each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.”
See 120.52(15), Fla. Stat. (1999). In turn, section 120.54(l)(a) provides that “[e]ach agency statement defined as a rule by s. 120.52 shall be adopted by the rulemaking procedure provided by this section.... ”
The ALJ found that in adopting its policy the School Board failed to follow the rule-making procedures of the APA and that the informal policy decision was therefore invalid. The ALJ also found that (1) paraprofessionals performing catheteriza-tions are in contact with bodily fluids on a daily basis and that a paraprofessional failing to use proper safety precautions is exposed to undue risk from an infectious disease, and (2) the School Board is not aware of any other settings where unlicensed, non-medical personnel are permitted to perform such catheterizations.
The record supports the conclusions of the ALJ. We do not agree with the School Board’s assertions that requiring it to comply with the rule-making procedures of the APA amounts to excessive judicial micromanagement of the routine details of job assignments. We have great difficulty in understanding how the use of non-medical personnel to perform these catheteriza-tions could be considered as routine job assignments. While the statute gives the School Board the authority to have this medical procedure done by nonmedical personnel, it can hardly be thought routine, ordinary and expected work for these paraprofessionals. Having clerical or educational staff perform such a uniquely medical procedure, with the very real attendant risks to all involved, strikes us as well beyond mere ordinary tinkering with job duties and assignments. If the School Board desires to implement this unusual statutory authorization, that in itself involves the kind of agency policy decision embraced by the rule-making requirements of the APA. Moreover it cannot be very difficult or time consuming for the School Board to formally adopt this policy by compliance with section 120.54.
AFFIRMED.
GUNTHER and STONE, JJ„ concur.

. See Ch. 120, Fla. Stat (1999).

. See § 232.465(2) Fla. Stat. (1997) ("Non-medical assistive personnel shall be allowed to perform health-related services upon sue- *1271 cessful completion of child-specific training by a registered nurse.... All procedures shall be monitored periodically by the nurse. Those procedures include ... (a) Cleaning intermittent catheterization, (b) Gastrostomy tube feeding, (c) Monitoring blood glucose, (d) Administering emergency injectable medication.”)